IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| FRANCOISE VIGNERON-MOULIN, | ) | CIVIL NO. 11-00359 LEK-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE QUEEN'S MEDICAL CENTER, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS THE QUEEN'S**
**MEDICAL CENTER AND JOHN A. JIULIANO, M.D.'S**
**MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 52, 54.]**

Before the Court are Defendant The Queen's Medical Center ("QMC"), and John A. Jiuliano, M.D.'s ("Dr. Jiuliano" collectively "Defendants") Motions for Summary Judgment ("Motions"), both filed on September 14, 2012. [Dkt. nos. 52, 54.] Plaintiff Francoise Vigneron-Moulin ("Plaintiff"), who is represented by counsel, did not file any opposition to the Motions. The Court finds these Motions suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). After careful consideration of the Motions, supporting memoranda, and the relevant legal authority, Defendants' Motions are HEREBY GRANTED for the reasons set forth below.

**BACKGROUND**

I.    **Factual Background**

    A.    **Complaint**

        Plaintiff alleges that she sustained a laceration to her right index finger and tendon on October 8, 2008, and was initially treated at Waianae Coast Comprehensive Health Center ("WCCHC") where she was advised to seen an immediate surgical consultation.  On October 9, 2008 she was treated by Dr. Jiuliano, and was scheduled to have an immediate surgery at QMC.  The scheduled surgery was delayed because QMC refused to authorize the use of the hospital facility and refused to accept Plaintiff's proof of insurance submitted by her carrier.  The surgery was postponed until October 16, 2008, when QMC was satisfied that Plaintiff's insurance was valid.  [Complaint ¶¶ 5-7.]

        Plaintiffs' first cause of action alleges a claim for medical malpractice against QMC.  She claims that she now suffers from a permanent disability due the delay in performing surgery, unhealthy conditions of the hospital, and an infection.  [Id. at ¶ 8.]  Her second cause of action alleges a medical malpractice claim against Dr. Jiuliano based on the delay in performing the surgery, failure to advise Plaintiff of the dangers of delaying surgery, conduct during the surgery, and failure to properly treat the infection.  [Id. at ¶ 13.]

2

B.     **Procedural History**

Pursuant to the January 24, 2012 Rule 16 Conference, initial disclosures were to be made by February 27, 2012, and Plaintiff's expert witness disclosures were due by September 4, 2012.  Defendants filed their initial disclosures on February 27, 2012; Plaintiff has not filed or serve hers as of the date of this order.  [Dkt. nos. 36, 40.]

On May 18, 2012, Defendants served their Requests for Answers to Interrogatories to Plaintiff, which specifically request that Plaintiff identify her expert witnesses, and provide the substance of the facts and opinions to which the expert is to testify.  [Dkt. nos. 42, 44.]  As of the date of this order, Plaintiff has not respond to Defendants' interrogatories. Plaintiff also failed to disclose her experts by the September 4, 2012 deadline.  [Dkt. no. 36.]

II.  **Defendants' Motions**

Defendants move for summary judgment on all of the claims against them.  Plaintiff did not file any opposition to the Motions.

A.     **Jiuliano Motion**

Dr. Jiuliano states that Plaintiff has failed to identify or disclose expert evidence to support her medical malpractice claims, and without such evidence, summary judgment should be granted in his favor.  [Mem. in Supp. of Jiuliano

3

Motion at 1.]

Dr. Jiuliano is a physician licensed to practice medicine in the State of Hawai'i, and asserts that he is competent to offer expert medical testimony in this case and has personal knowledge of the information set forth in his declaration. [Id. at 2-4 (citing Jiuliano Decl. at ¶¶ 1-2, Exh. D (Curriculum Vitae)).] Dr. Jiuliano opines that, to a reasonable degree of medical probability, "(a) the care and treatment that he rendered to Plaintiff was reasonable, appropriate, and met the standard of care; and (b) his care and treatment was not a cause or contributing factor to Plaintiffs claimed injuries." [Id. at 4.]

Dr. Jiuliano notes that Plaintiff has failed to present expert evidence, serve Initial Disclosures, identify expert testimony in response to Dr. Jiuliano's interrogatories, or disclose expert witnesses. He contends that Plaintiff has been given ample opportunity to identify and disclose experts in this case, and despite warnings from this Court, Plaintiff's counsel has continued to violate Court disclosure requirements. [Id. at 7-8.]

    B.    **QMC Motion**

Likewise, QMC argues that it is entitled to summary judgment because Plaintiff cannot put on a medical negligence case, including establishing violations of the standard of care

4

and medical causation.  [Mem. in Supp. of QMC Motion at 1-2.]

QMC submits that Dr. Jiuliano's defense of his own care and treatment necessarily means that QMC similarly complied with the applicable standard of care, and that QMC's facilities were either not substandard or had no impact on Dr. Jiuliano's ability to perform an appropriate surgery.  [Id. at 5.]  Further, QMC presents the expert testimony of orthopedic surgeon David Matthews, M.D. ("Dr. Matthews"), who opines that QMC met the standard of care, and that any alleged infectious conditions at the hospital were not a cause or contributing factor to Plaintiff's claimed damages.  Dr. Matthews indicates that Plaintiff's surgery was without complication and that there is no evidence of any post-operative complication or infection.  [Id. at 6 (citing Matthews Decl. at ¶¶ 4-7).]

QMC argues that it has met its burden on summary judgment, and that absent competent, admissible evidence to the contrary, Plaintiff's allegations must fail and it is entitled to summary judgment.  [Id. at 11.]

## STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment must be granted against a party that fails to demonstrate facts to establish

what will be an essential element at trial.  See
Celotex [Corp. v. Catrett], 477 U.S. [317,] 323
[(1986)].  A moving party has both the initial
burden of production and the ultimate burden of
persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210
F.3d 1099, 1102 (9th Cir. 2000).  The burden
initially falls on the moving party to identify
for the court "those portions of the materials on
file that it believes demonstrate the absence of
any genuine issue of material fact."  T.W. Elec.
Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809
F.2d 626, 630 (9th Cir. 1987) (citing Celotex
Corp., 477 U.S. at 323).  "A fact is material if
it could affect the outcome of the suit under the
governing substantive law."  Miller [v. Glenn
Miller Prods., Inc.], 454 F.3d [975,] 987 [(9th
Cir. 2006)].

When the moving party fails to carry its
initial burden of production, "the nonmoving party
has no obligation to produce anything."  In such a
case, the nonmoving party may defeat the motion
for summary judgment without producing anything.
Nissan Fire, 210 F.3d at 1102-03.  On the other
hand, when the moving party meets its initial
burden on a summary judgment motion, the "burden
then shifts to the nonmoving party to establish,
beyond the pleadings, that there is a genuine
issue for trial."  Miller, 454 F.3d at 987.  This
means that the nonmoving party "must do more than
simply show that there is some metaphysical doubt
as to the material facts."  Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586 (1986) (footnote omitted).  The nonmoving
party may not rely on the mere allegations in the
pleadings and instead "must set forth specific
facts showing that there is a genuine issue for
trial."  Porter v. Cal. Dep't of Corr., 419 F.3d
885, 891 (9th Cir. 2005) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).
"A genuine dispute arises if the evidence is such
that a reasonable jury could return a verdict for
the nonmoving party."  California v. Campbell, 319
F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred
Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000)
("There must be enough doubt for a 'reasonable
trier of fact' to find for plaintiffs in order to
defeat the summary judgment motion.").

> On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." <u>Miller</u>, 454 F.3d at 988 (quotations and brackets omitted).

<u>Rodriquez v. Gen. Dynamics Armament & Technical Prods., Inc.</u>, 696 F. Supp. 2d 1163, 1176 (D. Hawai`i 2010) (some citations omitted).

### <u>DISCUSSION</u>

The Court first notes that, although Plaintiff is represented by counsel, she failed to file any opposition to the Motions, did not respond to Defendants' discovery requests, or comply with any of the Court's disclosure requirements.  The Court treats the Motions as unopposed.

> When a motion for summary judgment is unopposed, the motion should be granted only when the movant's papers are themselves sufficient to support the motion and they do not reveal a genuine issue of material fact. <u>In re Rogstad</u>, 126 F.3d 1224, 1227 (9th Cir. 1997) (noting that it is in error to grant a motion for summary judgment simply because the opponent failed to oppose the motion); <u>Cristobal v. Siegel</u>, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (noting that an unopposed motion may be granted only after the court determines that there are no material issues of fact).

> Additionally, in a motion for summary judgment, "material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party." L.R. 56.1(g) (effective Dec. 1, 2009).  Thus, while this court is not permitted to grant an unopposed motion for summary judgment as a matter of right, <u>Siegel</u>, 26 F.3d at 1494-95, it must deem all facts proffered in [the defendant's] concise statement as admitted

> by [the plaintiff].  Therefore, the court must
> determine whether the facts, as asserted in [the
> defendant's] concise statement, warrant a grant of
> summary judgment.

Smith v. Clinton, Civil No. 10-00587 LEK-BMK, 2011 WL 3290522, at

*9 (D. Hawai'i July 31, 2011) (quoting Aga v. Winter, Civil No.

08-00509 SOM/LEK, 2009 WL 4406086, at *2-3 (D. Hawai'i Dec. 1,

2009) (some alterations in Winter)).

In order to maintain her claims for medical

malpractice, Plaintiff must establish the traditional elements of

a negligence cause of action, supported by expert medical

testimony.

> 2. Under Hawai'i law, a plaintiff in a
> medical malpractice case must establish that: the
> defendant owed a duty to the plaintiff; the
> defendant breached that duty; and there is a
> causal relationship between the defendant's breach
> and the plaintiff's injury.  See Bernard v. Char,
> 79 Hawai'i 371, 377, 903 P.2d 676, 682 (Ct. App.
> 1995).

> 3. Hawai'i courts generally require expert
> medical testimony to establish negligent treatment
> because "'lay jurors are ill prepared to evaluate
> complicated technical data for the purpose of
> determining whether professional conduct conformed
> to a reasonable standard of care and whether there
> is a causal relationship between the violation of
> a duty and an injury to the patient.'"  Id.
> (citations omitted).

Mamea v. United States, 781 F. Supp. 2d 1025, 1040 (D. Hawai'i

2011); see also Murphy v. United States, Civil No. 06-00304 BMK,

2009 WL 454627, at *4 (D. Hawai'i Feb. 23, 2009) ("Unlike an

ordinary negligence case, a malpractice case based on negligent

treatment cannot be established without expert medical testimony to support it.  Expert testimony aids in determining whether professional conduct conformed to a reasonable standard of care and whether there is a causal relationship between the violation of a duty and an injury to the patient." (citation and quotation marks omitted)).

To the extent Plaintiff alleges a claim based on an informed consent theory of liability, she must "adduce evidence to support a finding that the plaintiff, acting rationally and reasonably, would have withheld consent to a proposed course of treatment or surgery if properly advised of the risks."  Bernard, 79 Hawai'i at 384, 903 P.2d at 689.

In the instant matter, there are no material issues of disputed fact about whether Defendants breached the standard of care and whether any alleged negligence caused Plaintiff's injury.  Defendants' experts set forth undisputed testimony that Defendants met the standard of care, and that Defendants' conduct was not the proximate cause of Plaintiff's alleged injury. [Matthews Decl. at ¶¶ 4-7; Jiuliano Decl. at ¶¶ 1-2.]  Plaintiff has not rebutted this expert testimony.

The Court concludes that Defendants have met their burden on summary judgment as to each claim by demonstrating the absence of any genuine issue of material fact.  See T.W. Elec. Serv., Inc., 809 F.2d at 630.  Even drawing all justifiable

inferences in Plaintiff's favor, the Court concludes that there are no genuine issues of material fact, and that Defendants are entitled to judgment as a matter of law on each claim.  The Court HEREBY GRANTS both Motions.

**CONCLUSION**

On the basis of the foregoing, Defendants The Queen's Medical Center and John A. Jiuliano, M.D.'s Motions for Summary Judgment, both filed on September 14, 2012, are HEREBY GRANTED. The Clerk's Office is directed to close the case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 11, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**FRANCOISE VIGNERON-MOULIN V. THE QUEEN'S MEDICAL CENTER, ET AL.; CIVIL NO. 11-00359 LEK-BMK; ORDER GRANTING DEFENDANTS THE QUEEN'S MEDICAL CENTER AND JOHN A. JIULIANO, M.D.'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 52, 54.]**